## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**ANDRE DE PAULA,**                                    CASE NO.:

     *Plaintiff,*

**v.**

**SANTANDER CONSUMER USA INC.,**
**TRANS UNION, LLC, EXPERIAN**
**INFORMATION SOLUTIONS, INC. and**
**EQUIFAX INFORMATION SERVICES**
**LLC,**

     *Defendants,*

_____/

## PLAINTIFF'S COMPLAINT
### JURY DEMAND

1.    Plaintiff, Andre De Paula (hereinafter "Plaintiff" or "Mr. De Paula"), brings this action against Defendants Santander Consumer USA Inc. ("Santander"), Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian") and Equifax Information Services LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

2.    Plaintiff further alleges violation of the Florida Consumer Collection Practices Act, Florida Statute §559.72 *et. seq*. (hereinafter "FCCPA") against Santander.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.    Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

5.    Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Miami-Dade County, Florida.

## PARTIES

6.      Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Miami-Dade County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c) and Florida Statute §559.55(8).

7.      Defendant Santander is an Illinois corporation registered to conduct business in the State of Florida with a principal place of business located at 1601 Elm Street Suite 800, Dallas, TX 75201.

8.      Defendant Santander is a "debt collector" within the meaning of Florida Statute §559.55(7).

9.      Santander uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the three national consumer reporting agencies, Trans Union, Equifax, and Experian (collectively "credit reporting agencies" or "CRAs").

10.     These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

11.     Defendant Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

12.     Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the

2

business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

13.     Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

## STATUTORY FRAMEWORK

### THE FCRA

14.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

15.     Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." *See* 15 U.S.C. §1681(a)(1).

16.     The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

17.     Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies were under no obligation to treat an identity theft claim any different than a regular dispute.

18.     The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-

2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

19.     A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. *See* 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B). See 15 U.S.C. §§ 1681c-2(c)(2).

20.     In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

21.     "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc.,* No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

22.     The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

23.     The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

24.     In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

25.     The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

26.     In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C.S. § 1681i(a)(4).

27.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free

from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

28.    A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

29.    "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

30.    Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3),(4).

31.    The FCRA provides a private right of action against any person that violates the provisions of the FCRA. *See* 15 U.S.C. §§ 1681o, 1691n.

32.    If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)).

33.    If the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. *See* 15 U.S.C. § 1681n(a).

34.    A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

35.     Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

    a.     credit or insurance to be used primarily for personal, family, or household purposes;

    b.     employment purposes; or

    c.     any other purpose authorized under section 1681b of this title.

*See* 15 U.S.C. § 1681a(d)(1).

36.     The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

### **The FCCPA**

37.     The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

38.     The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." *See* Fla. Stat. § 559.72(9).

39.     "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." *See* Fla. Stat. §559.77(2).

40.    As a consumer, Mr. De Paula has a private right of action against Santander pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

## **FACTUAL ALLEGATIONS**

41.    Mr. De Paula is a victim of identity theft.

42.    On or about March 16, 2024, Mr. De Paula was denied financing for a vehicle prompting him to review his credit reports with Trans Union, Equifax and Experian.

43.    Mr. De Paula's credit reports listed several fraudulent accounts including an auto loan with Santander that he did not open or authorize anyone else to open using his personal identifying information ("Santander Account").

44.    On or about April 2, 2024, Mr. De Paula filed a police report with the Miami-Dade Police Department regarding the identity theft committed against him.

45.    On or about May 28, 2024, Mr. De Paula mailed dispute letters to Trans Union, Equifax and Experian, with a courtesy copy of each letter also mailed to Santander, disputing the fraudulent Santander Account and other fraudulent personal identifying information. With his dispute letters, Mr. De Paula included a copy of his police report.

46.    Upon information and belief, one or more of the credit reporting agencies also forwarded Mr. De Paula's dispute letters to Santander.

47.    On or about June 12, 2024, Trans Union sent Mr. De Paula correspondence informing him that it was not going to block the fraudulent information that he was disputing.

48.     Plaintiff did not receive investigation results from Trans Union in response to his May 28, 2024 dispute letter.

49.     Trans Union continued to report the fraudulent Santander Account in subsequent credit reports it prepared about Mr. De Paula.

50.     On or about June 22, 2024, Equifax sent Mr. De Paula correspondence requesting additional identifying information from him.

51.     Plaintiff did not receive investigation results from Equifax in response to his May 28, 2024 dispute letter.

52.     Equifax continued to report the fraudulent Santander Account in subsequent credit reports it prepared about Mr. De Paula.

53.     On or about June 13, 2024, Experian sent Mr. De Paula correspondence requesting additional identifying information from him which Mr. De Paula promptly uploaded to Experian's website.

54.     On or about July 3, 2024, Experian sent Mr. De Paula investigation results that the fraudulent Santander Account and some of the disputed personal identifying information was allegedly reporting accurately.

55.     Experian continued to report the fraudulent Santander Account in subsequent credit reports it prepared about Mr. De Paula.

56.     On or about January 28, 2025, Mr. De Paula mailed a letter to Equifax enclosing a photocopy of his driver's license and utility bill and requesting that Equifax investigate the fraudulent information he disputed in his May 28, 2024 letter.

57.     Mr. De Paula did not receive a response from Equifax, and Equifax continues to include the fraudulent information in subsequent credit reports without marking the account as being disputed by Mr. De Paula.

58.     On or about February 3, 2025, Mr. De Paula mailed dispute letters to Trans Union and Experian disputing the fraudulent Santander Account and other fraudulent personal identifying information. With his dispute letters, Mr. De Paula included a copy of the police report, a photocopy of his driver's license and a utility bill.

59.     Mr. De Paula did not receive a response from Trans Union, and Trans Union continues to include the fraudulent information in subsequent credit reports without marking the account as being disputed by Mr. De Paula.

60.     On or about March 10, 2025, Experian sent Mr. De Paula investigation results which stated that Experian deleted the fraudulent Santander Account from his credit file and updated his personal information.

61.     Defendants' derogatory and inaccurate reporting of the Santander Account on Mr. De Paula's credit reports negatively reflects upon Mr. De Paula's financial obligations, credit score and credit worthiness to existing and potential creditors.

62.     As, a result of Defendants' conduct, Mr. De Paula suffered mental and emotional distress associated with fraudulent information remaining in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

63.     Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *See Pedro v. Equifax, Inc.,* 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as

a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *See Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

## <u>COUNT I – VIOLATIONS OF FLA. STAT. §559.72(9)</u><br><u>AGAINST SANTANDER</u>

64.     Plaintiff incorporates by reference paragraphs 2, 4, 5 – 10, 37 – 46, 49, 52, 55, 57 – 59 and 61 – 62 as if fully stated herein.

65.     At all relevant times to this action, Santander is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

66.     Santander violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate or asserting the existence of some other legal right when Defendant knew that right did not exist.

67.     Specifically, Santander continues to report the fraudulent Santander Account on Plaintiff's credit reports after being placed on notice that the account is fraudulent, and Plaintiff is not responsible for the account.

68.     "Any person who fails to comply with any provision of  §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." *See* Fla. Stat. §559.77(2)

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against Santander in the form of actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II – VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST SANTANDER

69.     Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 9, 10, 14 – 17, 27 – 29, 31 – 36, 41 – 46, 49, 52, 55, 57 – 59 and 61 – 62 as if fully stated herein.

70.     Santander is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

71.     Santander violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's May 28, 2024 and February 3, 2025 dispute when it failed to review all relevant information provided by the credit reporting agencies.

72.     As a result of Santander's violations of the FCRA, Plaintiff has been damaged.

73.     Santander negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

74.     Additionally, Santander committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

75.     Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Santander in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

<u>**COUNT III – VIOLATIONS OF 15 U.S.C. §1681c-2**</u>
<u>**AGAINST TRANS UNION**</u>

76.     Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 11, 14 – 27, 30 – 36, 41 – 49, 58 – 59 and 61 – 62 as if fully stated herein.

77.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

78.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

79.     During the relevant timeframe, Trans Union received Plaintiff's May 28, 2024 and February 3, 2025 dispute letter which requested a block of the fraudulent Santander Account.

13

80.     Plaintiff disputed the Santander Account on his Trans Union credit report, identified himself, advised Trans Union of the Santander Account being opened fraudulently, furnished Trans Union with a copy of the police report, and requested that Trans Union block the fraudulent information.

81.     Rather than block the fraudulent information, Trans Union negligently and willfully disregarded its obligations under the FCRA by refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

82.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

83.     Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IV - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST TRANS UNION

84.     Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 11, 14 – 27, 30 – 36, 41 – 49, 58 – 59 and 61 – 62 as if fully stated herein.

85.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

86.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

87.     During the relevant time frame, Trans Union received Plaintiff's May 28, 2024 and February 3, 2025 dispute letters which requested that the fraudulent Santander Account be removed from his credit file.

88.     Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

89.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

90.     Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V - VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST TRANS UNION

91.     Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 11, 14 – 27, 30 – 36, 41 – 49, 58 – 59 and 61 – 62 as if fully stated herein.

92.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

93.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

94.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

95.     After Plaintiff's May 28, 2024 and February 3, 2025 dispute letters, Trans Union was placed on notice that the Santander Account is fraudulent, yet Trans Union continues to include the fraudulent account in Plaintiff's credit file.

96.     Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

97.     In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VI – VIOLATIONS OF 15 U.S.C. §1681c-2
## AGAINST EQUIFAX

98.     Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 13 – 27, 30 – 36, 41 – 46, 50 – 52, 56 – 57 and 61 – 62 as if fully stated herein.

99.     At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

100.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

101.     During the relevant timeframe, Equifax received Plaintiff's May 28, 2024 dispute letter which requested a block of the fraudulent Santander Account.

16

102.    Plaintiff disputed the Santander Account on his Equifax credit report, identified himself, advised Equifax of the Santander Account being fraudulent, furnished Equifax with a copy of the police report, and requested that Equifax block the fraudulent information.

103.    Rather than block the fraudulent information, Equifax negligently and willfully disregarded its obligations under the FCRA by refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

104.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

105.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

106.    Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 13 – 27, 30 – 36, 41 – 46, 50 – 52, 56 – 57 and 61 – 62 as if fully stated herein.

107.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

108.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

109.    During the relevant time frame, Equifax received Plaintiff's May 28, 2024 dispute letter which requested that the fraudulent Santander Account be removed from his credit file.

110.    Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

111.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

112.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EQUIFAX

113.    Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 13 – 27, 30 – 36, 41 – 46, 50 – 52, 56 – 57 and 61 – 62 as if fully stated herein.

114.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

115.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

116.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

117.    After Plaintiff's May 28, 2024 dispute letter, Equifax was placed on notice that the Santander Account is fraudulent, yet Equifax continues to include the fraudulent account in Plaintiff's credit file.

118.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

119.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IX – VIOLATIONS OF 15 U.S.C. §1681c-2
### AGAINST EXPERIAN

120.    Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 12, 14 – 27, 30 – 36, 41 – 46, 53 – 55 and 60 – 62 as if fully stated herein.

121.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

122.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

123.    During the relevant timeframe, Experian received Plaintiff's May 28, 2024 which requested a block of the fraudulent Santander Account.

124.    Plaintiff disputed the Santander Account on his Experian credit report, identified himself, advised Experian of the Santander Account being fraudulent, furnished Experian with a copy of the police report and requested that Experian block the fraudulent information.

19

125.     Rather than block the fraudulent information, Experian negligently and willfully disregarded its obligations under the FCRA by refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

126.     Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

127.     Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN

128.     Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 12, 14 – 27, 30 – 36, 41 – 46, 53 – 55 and 60 – 62 as if fully stated herein.

129.     At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

130.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

131.     During the relevant time frame, Experian received Plaintiff's May 28, 2024 dispute letter which requested that the fraudulent Santander Account be removed from his credit file.

132.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

133.    Additionally, Experian unreasonably relied on information provided by Santander, when readily verifiable information was provided by Plaintiff in the disputes placing Experian on notice that Santander's credit information was inaccurate and unreliable.

134.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

135.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT XI - VIOLATIONS OF 15 U.S.C. §1681e(b)
### AGAINST EXPERIAN

136.    Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 12, 14 – 27, 30 – 36, 41 – 46, 53 – 55 and 60 – 62 as if fully stated herein.

137.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

138.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

139.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

140.     After Plaintiff's May 28, 2024 dispute letter, Experian was placed on notice that the Santander Account is fraudulent, yet Experian continues to include the fraudulent account in Plaintiff's credit file.

141.     Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

142.     In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### JURY DEMAND

143.     Plaintiff demands a trial by jury on all issues so triable.

Dated: March 31, 2025                              *Respectfully submitted*,

**SHARMIN & SHARMIN, P.A.**

*/s/ Eiman Sharmin*
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022

*Counsel for Plaintiff*

22